CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

December 20, 2019

LETTER TO COUNSEL

RE: *Demetrius J v. Saul*
Civil No. 1:18-cv-03812-JMC

Dear Counsel:

On December 11, 2018 Demetrius J ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claims for Supplemental Security Income ("SSI"). (ECF No. 1). I have considered the parties' cross-motions for Summary Judgment, and Plaintiff's reply. (ECF Nos. 15 & 20). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the SSA in part, and remand the case to the SSA for further analysis pursuant to sentence four of 42 U.S.C. § 405(g)]. This letter explains my rationale.

Plaintiff protectively filed his claims for benefits on February 16, 2016, alleging an onset date of September 1, 2012. (Tr. 15).[1] His claims were denied initially, and again on reconsideration. (Tr. 15). A hearing was held on October 24, 2017 before Administrative Law Judge ("ALJ") Lauren Penn. *Id*. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. *Id*. The Appeals Council declined review (Tr. 1–8), and consequently the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that, during the relevant time frame, Plaintiff suffered from the severe impairments of "status-post gunshot wound left hip, degenerative joint disease of multiple joints, degenerative joint disease of left hip, obesity, adjustment disorder with depression, and bipolar disorder." (Tr. 17). Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 416.967(a) except he can lift and carry 10 pounds occasionally and frequently. He can occasionally stoop, crouch, kneel, and crawl. He can occasionally climb stairs and stamps, but never ladders, ropes, or scaffolds. He is limited to simple, routine, repetitive work. He needs a cane to ambulate. (Tr. 21).

---

[1] "At the hearing, claimant, upon advice of counsel, amended his alleged onset date to his application date, February 19, 2016." (Tr. 15).

After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could not perform his past relevant work but could perform other jobs existing in significant numbers in the national economy. (Tr. 26–27). Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time frame. *Id.* at 28.

Plaintiff makes three primary arguments on appeal: (1) the ALJ's analysis of Plaintiff's limitation in concentration, persistence, or pace was flawed and runs afoul of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); (2) the ALJ failed to resolve apparent conflicts between the VE testimony and the Dictionary of Occupational Titles ("DOT"); and (3) the ALJ incorrectly assessed Plaintiff's RFC, particularly by substituting her opinion for those of physicians. (ECF No. 15). I agree that the ALJ's opinion did not comport with *Mascio*, and I therefore remand the case for further analysis.

First, Plaintiff argues that the ALJ's RFC analysis of Plaintiff's limitations in concentration, persistence, or pace failed to comply with the requirements of *Mascio*. 780 F.3d at 638. In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Id.* at 637–38. At step three of the sequential evaluation, the SSA determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2018). Listings 12.00 *et seq.* pertain to mental impairments. *Id.* at § 12.00 (2018). The relevant listings therein consist of: (1) "paragraph A criteria," which consist of a set of medical findings; (2) "paragraph B criteria," which consist of a set of impairment-related functional limitations; and (3) "paragraph C criteria," which relate to "serious and persistent" disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment. *Id.* § 12.00(A), (G). A claimant's impairments meet the listings relevant by satisfying either the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. *Id.* § 12.00(A).

Paragraph B consists of four broad functional areas including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *Id.* § 12.00(A)(2)(b). The functional area of concentration, persistence, or pace "refers to the abilit[y] to focus attention on work activities and stay on task at a sustained rate." *Id.* § 12.00(E)(3).

The SSA employs the "special technique" to rate a claimant's degree of limitation in each functional area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(b), (c)(2), 416.920a(b), (c)(2) (2018). The SSA uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, or extreme. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). A moderate limitation signifies that the claimant has only a fair ability to function in the relevant area of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2)(c) (2018).

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE— and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined

2

that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. *Mascio*, 780 F.3d at 637–38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r, Soc. Sec. Admin.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

In the instant case, the ALJ found that Plaintiff had moderate difficulties maintaining concentration, persistence, or pace. (Tr. 20). The ALJ stated:

> With regard to concentrating, persisting, or maintaining pace, the claimant had moderate limitations. The claimant complained of concentration problems and indicated he could pay attention for only 20 to 30 minutes (Ex. 7E). The claimant described side effects of drowsiness and dizziness from his medications. He testified that he was depressed and was always tired, as he slept only four to four hours per night. However, he was not documented to have any serious deficiencies in his attention and concentration. At the claimant's single psychiatric evaluation with his treating psychiatrist in the record, the claimant was observed to have good attention and concentration. Moreover, in his primary treatment records, the claimant was consistently observed to have normal attention span and concentration. He was not documented to exhibit behavior that would be disruptive or distracting and did not report exacerbations of his psychiatric symptoms that would cause a need for breaks or absences. The claimant's limited complaints of psychiatric symptoms and lack of more significant objective findings weigh against a finding of a marked limitation in the abilities to focus attention on work activities and stay on tasks at a sustained rate. For these reasons, the claimant has only a moderate limitation in concentrating, persisting, or maintain pace. (Tr. 20).

The restriction to "simple, routine, and repetitive tasks" in this case is directly analogous to that deemed insufficient in *Mascio*, 780 F.3d at 638 (finding "simple, routine tasks or unskilled work" to be insufficient to address a claimant's moderate limitations in concentration, persistence, or pace). In the absence of any additional limitation to accommodate Plaintiff's moderate difficulties maintaining concentration, persistence, or pace, *Mascio* requires that the ALJ explain why no such limitation is required. *Id.* at 638. Contrary to the Commissioner's argument that the ALJ' conducted such analysis, the ALJ has not provided such an explanation here. Specifically, the Commissioner emphasizes the ALJ's statement that "despite the lack of significant ongoing psychiatric complaints or objective findings, the undersigned notes the claimant described side effects of drowsiness and dizziness from his medication, and indicated that he could only pay attention for 20-30 minutes, and *out of caution*, finds the claimant limited to simple, routine, repetitive work." (Tr. 26). However, this only shows how the ALJ determined that Plaintiff had

3

a moderate limitation in his ability to concentrate, persist, and maintain pace, and not whether Plaintiff required a limitation to address it in his RFC. *See* (Tr. 21–26). *Mascio* requires more.

Without an adequate analysis on the issue of Plaintiff's limitations in concentration, persistence, and pace, I am unable to ascertain whether the RFC assessment would permit a person with Plaintiff's limitations to sustain a competitive pace, with only normal breaks. In light of this inadequacy, I must remand the case to the SSA for further analysis consistent with the Fourth Circuit's mandate in *Mascio*. In remanding for additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

Second, Plaintiff argues the ALJ failed to resolve an apparent conflict between the VE's testimony and the DOT. (ECF No. 15-1 at 13). The ALJ is required to address any conflicts or apparent conflicts between the VE's testimony and the information contained in the DOT. *See Pearson v. Colvin*, 810 F.3d 204, 208–10 (4th Cir. 2015) ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not these is such consistency."). In the present case, the apparent conflict is Plaintiff's limitation to "simple, routine, repetitive work," and the requirements of the General Education Development (GED) Reasoning Code of 2, which necessitate that an individual "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." (ECF No. 15-1 at 16). Fundamentally, Plaintiff questions how an individual limited to "simple, routine, repetitive work," can be expected to carry out detailed instructions. *Id.* at 17.

As noted by the Commissioner after Plaintiff filed this brief the United States Court of Appeals for the Fourth Circuit issued a decision on-point in *Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019). In this case the Court determined there was "no comparable inconsistency between [Plaintiff's] residual functional capacity [simple, routine, repetitive tasks of unskilled work] and Level 2's notions of "detailed but uninvolved . . . instructions" and tasks with "a few [ ] variables." *Id.* The Court explicitly said:

> To begin with, detailed instructions are, in the main, less correlated with complexity than with length. Instructions often include many steps, each of which is straightforward. Driving directions are a good example: they may prescribe many turns, but the turns are generally easy to make, and the route rarely changes, making the directions simple, routine, and repetitive. Further, there is no conflict between "simple" and "uninvolved" instructions, as both connote instructions that "are not complicated or intricate." *Id.* at 143–44.

This Court agrees with the Commissioner that Plaintiff's second contention is without merit, as it was explicitly answered—and rejected—by the Fourth Circuit. *See Jackie W. v. Comm'r, Soc. Sec. Admin.*, 2019 WL 5960642, at *5 (D. Md. Nov. 13, 2019) ("As *Lawrence* makes clear, there was not an apparent conflict between Plaintiff's limitation to "simple, routine, and repetitive tasks" and the Reasoning Level 2 jobs identified by the VE. Therefore, the VE's testimony is substantial evidence for the ALJ's step five finding, and the AC did not err in adopting it."). As Plaintiff failed to provide the Court with any explanation as to how the instant case is distinguishable, and the Court can find none, this argument is rejected.

Plaintiff, finally, argues that the ALJ's "physical RFC is not based on substantial evidence" and the ALJ erred by reaching her own medical conclusion about the evidence. (ECF No. 15-1 at 8, 13). Counsel recently made almost an identical argument, which was rejected by this Court.[2] In doing so, the Court noted:

> Plaintiff maintains that the ALJ improperly substituted her opinion for the opinion of doctors in assessing her RFC. Although an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so, the weighing of various evidence is precisely the typical province of the ALJ. If such a comparison was considered playing doctor, as proposed by Plaintiff, then the whole of the administrative review would be an illegality. Rather, [a] typical case of an ALJ impermissibly 'playing doctor' is when the ALJ draws medical conclusions themselves about a claimant without relying on medical evidence.

*Marshall v. Berryhill*, No. CV TMD 16-62, 2017 WL 1196488, at *4 (D. Md. Mar. 31, 2017) (determining substantial evidence supported the decision of the ALJ, and denying Plaintiff's Motion for Summary Judgment) (internal citations omitted).

As described by the Commissioner, Plaintiff ambiguously "argue[d] that the ALJ substituted her opinion for those of physicians." (ECF No. 20-1 at 3 n.2). However, "[i]t is the ALJ's duty to determine the RFC, and she must base it on all of the relevant evidence in the care record. And, an ALJ is to evaluate ever medical opinion received. Therefore, the ALJ was simply doing what was required of her." (ECF No. 20-1 at 3 n.2). When evaluating medical opinions, the Fourth Circuit outlined that the ALJ should consider:

> (1) [W]hether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.

*Dunn v. Colvin*, 607 Fed. App'x. 264, 267–68 (4th Cir. 2015); 20 C.F.R. § 404.1527.

As pertinent to the instant case, a treating source's opinion as to the nature and severity of the impairments will be given controlling weight — when well supported by medically acceptable clinical and laboratory diagnostic techniques, and when the opinion is consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). On the other hand, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).[3]

---

[2] Plaintiff states, "Federal Judges have little patience with ALJ's who substitute their own medical judgments for the conclusions of physicians," and while in theory that appears accurate, this Court also has little patience for "recycled, boilerplate argument[s]" that are stated without citation to any supporting evidence, or foundation within the record. *See Powell v. Social Sec. Admin*, 2013 WL 2300971, at *2 (D. Md. May 23, 2013) (considering boilerplate arguments). Thus, for the reasons outlined here, Plaintiff's argument that the ALJ "reached her own medical conclusion," which was not based in substantial evidence, is particularly unavailing.

[3] "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

In assessing Plaintiff's RFC, the ALJ gave "some weight," to the opinion of Dr. Benjamin,[4] one of Plaintiff's primary care providers. (Tr. 25). Dr. Benjamin opined that plaintiff "would be unable to perform the exertional requirements of dentary exert work, would need to lie down during the day, and would have a high level of time off task and absenteeism. However, she did not provide specific work limitations." *Id.* In affording Dr. Benjamin's opinion only "some weight," the ALJ noted that the assessment was inconsistent with the Doctor's own treatment notes; there was a lack of serious objective findings overall; Dr. Benjamin only saw Plaintiff for routine medication refills with limited complaints and few positive physical examination findings; and the assessment consisted merely of checkboxes with minimal rationale. (Tr. 25).[5] In sum, an ALJ need not accept the opinion of any physician (including a treating physician) if such is brief, conclusory, and inadequately supported by clinical findings. This was the case here. Therefore, the ALJ's assignment of weight was supported by substantial evidence.[6]

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF No. 15), is **DENIED** and Defendant's Motion for Summary Judgment (ECF No. 20) is **DENIED**. The Commissioner's judgment is **REVERSED in PART**, and pursuant to sentence four of 42 U.S.C. § 405(g), this case is **REMANDED** for further proceedings in accordance with this opinion. The Clerk is directed to **CLOSE** this case. Despite the informal nature of this letter, it should be flagged as an opinion. A separate order will issue.

Sincerely yours,

  /s/

J. Mark Coulson
United States Magistrate Judge

---

[4] As Dr. Benjamin is the only health care provider discusses in Plaintiff's brief, it appears that this is the only doctor that Plaintiff maintains the ALJ erred in weighing such opinion.

[5] *See*, *Crawley v. Comm'r Soc. Sec*, 2013 WL 93202, at *2 (recognizing the treating physician's opinion was not entitled to controlling weight because it was inconsistent with other substantial evidence, based on the use of a check-box form with little explanation, the treatment notes from the Doctor did not support the restrictive limitations, and the inconsistencies between the Doctor's opinions, Plaintiff's other treatment records, and her activities of daily living. Accordingly, then-Magistrate Jude Gallagher determined she was "readily able to discern and evaluate, from the ALJ's analysis, the reasons he chose to afford 'limited weight' to the Doctor's opinion, and therefore the ALJ's assignment of weight was supported by substantial evidence)

[6] Further, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies.'" *Dunn*, 607 Fed. App'x. at 267 (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).